## JACKSON JONES

*vs.*

## SARAH J. WEBB *et al.*

New Castle, Feb. T. 1877.

*Devise; construction of.*

1. Where a testator devises to A and B all his real and personal estate whatsoever, share and share alike, but in case of death of either of them it is to go to their children, the devisees surviving the testator take an absolute interest in both the personal and real estate devised to them.

2. The words "in case of death of either of them" mean death in the lifetime of the testator, and not death at any time however distant.

PETITION FOR PARTITION.—Israel D. Jones, in his last will and testament, probated December 24, 1834, devised as follows: "I do give and bequeath to my sister Elizabeth Jones and sister Sarah J. Webb all my real and personal estate whatsoever, share and share equal alike; but in case of death of either of them it is to go to their children."

The testator at the date of his will and at the time of his death was seised of an estate in fee simple of the lands mentioned in the petition. He left to survive him a widow, Margaret Jones, and two sisters and a brother, his only heirs at law, viz., the said Elizabeth Jones and Sarah J. Webb and Jesse G. Jones.

Elizabeth Jones was never married; she died in 1845. By her will, dated the 16th day of 12th month, 1845, she devised as follows: "As to all the residue and remainder of my estate, real and personal, wheresover and whatsoever, I give and devise the same to my sister Sarah Webb, wife of Reuben Webb, of the city of Philadelphia, currier, to her sole and separate use, for and during the time of her natural life, and from and after her death I give and devise the said residue and remainder of my estate, real and personal, to all the children of my said sister, Sarah Webb, who may be living

at the time of her death, their heirs and assigns, and to the issue of any such child or children of said Sarah who may be living at the time of her decease, their heirs and assigns; such issue to take only the share or shares which would have belonged to his or her parent or parents if such parent or parents had been living at the time of my said sister's death; such issue to take their shares justly and equally among themselves."

The petitioner is a son of Jesse G. Jones, and a grandson and one of the heirs at law of Israel D. Jones. Sarah J. Webb is living, and has three daughters who are living, namely, Elizabeth W. Hobson, Harriet W. Paist, wife of Mahlon K. Paist, and Margaret A. Kitchen, wife of James Kitchen. Sarah J. Webb was the mother of James Webb, who is dead, leaving to survive him a widow, Susan R. Webb, and three children, Harriet P. Webb, Benjamin C. Webb, and Charles J. Webb, who are living.

*Benjamin Nields*, for the petitioner.

*John C. Patterson*, for the defendants.

THE CHANCELLOR.—The material question to be considered in determining the right of the petitioner to partition of the land described in the petition is, What estate did Elizabeth Jones take in said lands under the will of her brother, Israel D. Jones? Did she take a fee simple, or a life estate only therein? To determine this question, it is necessary to consider the effect of the words "but in case of death of either of them it is to go to their children."

Mr. Jarman says, in his treatise on Wills, vol. 2, 659: "It has become an established rule that where the bequest is simply to A, and in case of his death, or if he die, to B, A, surviving the testator, takes absolutely." The case of *Lowfield* v. *Stoneham*, 2 Str. 1261, has always been supposed to favor this view. In that case the words of the will were: "I give to my living brother John Stoneham £1,000, and, in case of his death, to his wife, Susana" (who was the defend-

ant).   It appeared that John Stoneham survived the testator, and therefore the plaintiff insisted this legacy (which the defendant admitted to have received) vested absolutely in him, and was assets in her hands.   The action was against the executrix, in which the plea of *plene administravit* was pleaded.   On the part of the defendant it was offered to give in evidence that the testator *in extremis* declared he meant only to give his brother the interest of the £1,000, and that the defendant should have the principal in case she survived him.   The chief justice rejected the evidence, remarking that in the case of *Brown* v. *Selwin,* Cas. t. Talb. 240, the House of Lords had refused it even where it was to support the legal interpretation of the will.

This remark of the chief justice has been considered by text-writers, and by subsequent decisions, as determining the legal effect of the words "in case of his death," although the particular question before the court seemed to be whether parol evidence was admissible to determine the meaning of the testator in the use of those words.   The inference as to the legal meaning of the words in the opinion of the judge is plain.

In *Trotter* v. *Williams,* Prec. in Ch. 78, the devise was to A £500, to B £500, and so to five others a like sum ; "and if any to whom I have given any money legacy happen to die, then his or her legacy, and all the residue of my personal estate, to go to such of them as be then living."   The court says the words "shall go to such of them as shall be then living" must refer to a certain time, and that is, when the legacies become payable, which is at the death of the testator.

In *Hinckley* v. *Simmons,* 4 Ves. 160, the words of the will were : "I do give and bequeath unto my sister Mary Hinckley all my fortune and everything I have a power to leave, and, in case of her death, I do then give and bequeath all I have to my mother, Mary Hinckley."   *Lord Chancellor* Loughborough says : "Upon the construction of the will, I am perfectly satisfied upon the case of *Lowfield* v. *Stoneham,* 2 Str. 1261, which is precisely this : taking the words to import

a contingency, and not limiting the estate of the defendant May Simmons to an estate for life, I am of the opinion she is entitled absolutely."

In the case of *Lord Douglas* v. *Chalmer*, 2 Ves. Jr. 501, the testatrix gave all the rest and residue of her personal estate and effects, subject, etc., for and to the use and behoof of her daughter Frances, Lady Douglas, and, in case of her decease, to the use and behoof of her children, share and share alike, to whom my said trustees and executors shall account for and pay over and assign the said residue. By a codicil she gave her finest diamond ring to her daughter Douglas. The Lord Chancellor said : " It is not an indifferent circumstance that, in the codicil, there is a legacy of a ring to Lady Douglas. I cannot possibly construe that to be consistent with her having all the interest in the residue, except upon the supposition that, at the time of making the codicil, the testatrix had quite forgot what she had done by the will ; but if the residue was given to her for life only, it is very intelligible and natural that the best diamond ring should be given to her : it is that species of legacy that indicates personal affection and regard, and distinguished her as not having anything absolutely in the residue." It is manifest, therefore, that other circumstances than the words " and in case of her decease " controlled the decision.

In the case of *King* v. *Taylor*, 5 Ves. 806, the testatrix gave legacies to her two children respectively. The will contained this item : " I do will and ordain that, if either of my children should die, the surviving shall have what I have left to the other." The son survived his sister, and claimed her share under the will. The Master of the Rolls said : " I am much inclined to think it is impossible to raise any judicial doubt upon this case ; for repugnancies would arise from the construction of the defendant. This is perfectly distinguishable from all the cases upon which the words 'in case of,' 'if it shall happen,' etc., for here is a specific time pointed out at which it appears evidently to be the intention that the legatee should be put in complete possession of the legacy ; which

must be expunged and declared not to operate to any intent whatsover, and to have been put in for no purpose upon the defendant's construction." The defendant was the surviving brother and claimant. This case was, from a consideration of the terms of the will itself, distinguished, as the chancellor says, from all the cases, upon the words "in case of," "if it shall happen," etc.

In *Cambridge* v. *Rous*, 8 Ves. 12, legacies were given to two sisters, with a direction, in case of the death of each reciprocally, to devolve to the other. It was decided that that direction was confined to a case of a lapse by the death of either in the life of the testator, and did not prevent the vesting absolutely. The Master of the Rolls, *Sir* William Grant, in his opinion, remarks: "The case therefore resembles more *Hinckley* v. *Simmons* and *Lowfield* v. *Stoneham*, than either of the other three; in those two no particular circumstances to influence the construction appeared,— nothing to argue from in the context of the will; and they seem to support the proposition that when such words occur by themselves, and there is nothing to explain them, they import the contingency of dying before the testator."

In the case of *Webster* v. *Hale*, 8 Ves. 410, it was held that a legacy of stock in trust for the use, exclusive right, and property of A, but, should she happen to die, then in that case among her children; another legacy of stock to A, to be paid her as soon as possible, or, in the event of her death, among her children; another legacy of stock to B, and, in case of her death, among her children, — were all legacies absolute in the respective mothers. The Master of the Rolls said: "The difficulty in all such cases is to ascertain what the testator meant by applying words of contingency to an event that is certain. The words taken literally imply doubt as to an event of which no doubt could be entertained. A construction therefore is absolutely necessary: either that whenever the first legatee dies, the other shall take, or that if the first is prevented from taking by dying in the lifetime of the testator, the other shall be substituted for him; in other words,

whether it means an interest for life to one with remainder to the others, or only that, in case the one does not take, the other shall.   The first consideration is which construction the words naturally bear.   It does seem that the two first bequests point more to an alternative disposition either to Mrs. Webster, or to her children, than to a bequest in succession, first to her and afterwards to her children.   In the first bequest he uses words which seem to convey an intention of giving her the absolute property in the stock.   The word ' but ' is disjunctive and adversative.   It opposes one case to another, and implies that the children are to take in an event different from that in which the parent is to take."   The meaning and effect of the word " but," as recognized in this case, is that claimed for the same word in the will of Israel D. Jones by the solicitor for the defendants.

A testator devised as follows : " All the rest and residue and remainder of all my real and personal estate, whatsoever and wheresoever, I give, devise, and bequeath unto my afore-said trustees for the use and benefit of Mrs. Ann Popplewell, and, in case of her death, to be equally divided between the children of my half-brother, William Whitehall."   Mrs. Popplewell survived the testator ; *Sir* William Grant, Master of the Rolls, decreed payment to the executor of Mrs. Popplewell, as having taken the absolute interest.   *Ommaney* v. *Bevan*, 18 Ves. 291.

In the case of *Beatty* v. *Montgomery*, 6 C. E. Green, 327, the chancellor says : " If a legacy is given simply to A, without fixing any time for payment, with provision that, if A should die, it shall go to B, this gives a vested legacy to A if he survives the testator ; the death is held to be death in the life of the testator."

In the case of *Home* v. *Pillans*, 2 Mylne & K. 15, the will contained, among others, the following bequest : " I give and bequeath to my nieces Catharine and Mary, the sisters of the said David and John Home, the sum of £2,000 sterling each, when and if they should attain their ages of twenty-one years, and which said legacies to my two said nieces I

give to them for their and each of their own sole and separate use, free from the debts or control of their or either of their husbands ; and in the case of the death of my said nieces, or either of them, leaving children or a child, I give and bequeath the share or shares of such of my said nieces or niece so dying, unto their or her respective children or child." The residuary clause of the will gave the residue of the testator's personal estate to trustees, upon trust for his nephew William C. Macpherson, to be transferred and paid to him when and if he should attain the age of twenty-one ; and it then proceeded in these words : "And in case of his death under that age, then to my said nephews David and John Home, and to my said nieces Catharine and Mary Home, in equal shares and proportions ; the shares of my said nieces to be enjoyed by them respectively, for their respective lives, for their own sole and separate use, free from the debts or control of their respective husbands ; and on their death the share of each of them to go to their respective children ; the children of each to take the share of their respective parents equally." The Master of the Rolls held that the interest taken by each of the testator's nieces in the £2,000 legacy did not become absolute in their respectively attaining the age of twenty-one, but continued to be subject to an executory bequest over in the event of their leaving children living at their death. Upon appeal *Lord Chancellor* Brougham reversed the decision of the Master of the Rolls. He says : "There can be no question that a bequest to any person, and, in case of his death, to another, is an absolute gift to the first legatee if he survives the testator, and this, whatever be the form of expression ; as, ' if he die,' 'should he happen to die,' 'in case death should happen to him,' etc.,—the event here contemplated being so inevitable that it cannot be deemed a contingency. The courts have held that something else must be intended than merely to provide for the case of the legatee dying at some time or other, and have said that they will rather suppose the testator to have contemplated and provided for the case of the legatee dying in his own lifetime, and so have read those words as if they had been

' in case of his death during the testator's lifetime ; ' in which event alone they have allowed the bequest over to take effect. The inconsistency of treating as a contingency the event of all others the most certain is not the only consideration which has swayed the courts in seeking for qualifications to restrict the generality of such clauses. The leaning in favor of vesting, and against a construction which would postpone the absolute enjoyment, and indeed keep in doubt and suspense the nature, of the interest bestowed, has here, as in other branches of the law, operated powerfully in the same direction. To cite the instances in which the fundamental position to which I have referred has been laid down, or recognized and acted upon, would be to go through almost all the cases upon such bequests from the case of *Lowfield* v. *Stoneham*, 2 Str. 1261, downwards. But there is a series of decisions by *Sir* W. Grant— in which he constantly adhered to the doctrine, commented upon the other cases, and reconciled some that were apparently (and but apparently) at variance with it—which may be consulted with great advantage, as bringing the whole matter within a convenient compass. I allude to *Turner* v. *Moor*, 6 Ves. 557 ; *Cambridge* v. *Rous*, 8 Ves. 12 ; *Webster* v. *Hale*, Id. 410 ; *Ommaney* v. *Bevan*, 18 Ves. 291, and more particularly to the second of these,—*Cambridge* v. *Rous*. That was a bequest to two sisters, and each gift was coupled with a proviso that, in case of the death of one, the legacy should devolve to the survivor. Both were held clearly to vest absolutely on the legatees respectively surviving the testator. But I cite this case as much for the powerful view which *Sir* William Grant takes in his luminous judgment of the other cases, as for the decision which he there pronounces, —that ' no difference whatever is made by the circumstance of the legatees over being the children of the first taker ' is equally beyond dispute. Indeed this was the case in *Turner* v. *Moor*, and in several other recent cases, particularly in *Slade* v. *Milner*, 4 Madd. 144, decided by the present Master of the Rolls." Again, the Lord Chancellor says : " It may thus be stated as a general proposition that, where the bequest over

is in case of the legatees' death, and no other reference can be made, the period taken is the life of the testator." Again, he says, "that the construction adopted below, of death at any time, is inconsistent with all the cases from the earliest downwards, I feel fully assured." A principle of construction, and which is applicable to the devise contained in the will of Israel D. Jones to his two sisters, is this: that a bequest made in terms which according to ordinary construction are sufficiently large to pass an absolute interest is never to be cut down into a gift for life only, except in cases where this qualification is necessary to render the whole will consistent. See the notes to 6 Ves. 557, 8 Ves. 410, 4 Ves. 162, 587. It is also well established that no exception to the construction afforded by any of the preceding cases exists where the first gift is to the parent and the second to the children. The word "children," in such connection, will have no other or greater effect than the name of any other person. 2 Jarm. Wills, 663. To resume the consideration of the rule of construction in respect to the words "in case of death:" A testatrix bequeathed the sum of £4,000 to her friend and pastor, and, in case of his decease, gave the same legacy to his wife, and at her decease to their eldest daughter. The vice-chancellor held that the plaintiff (her pastor), having survived the testatrix, was absolutely entitled to the legacy. *Origan* v. *Baines,* 7 Sim. 40.

In *Karker's Appeal,* 60 Pa. 150, the court says: "Where personal estate is given to a person indefinitely or absolutely, and, in case of his death, to another, the disposition, though apparently constituting a gift of a life interest with a quasi remainder, is, in the absence of all indications of a contrary interest, construed to amount to an hypothetical limitation of the absolute interest, to take effect in the event of the person named as first taker surviving the testator, with an alternative limitation over to take effect in case of the death of the first taker in the lifetime of the testator." An appeal was taken from this decision to the supreme court of the State, and the decision was affirmed. 60 Pa. 155.

In the case of *Hughes* v. *Hughes,* 12 B. Mon. 115, the

devise being to one " when of age or marry, this property in
the event of the death of any one or more of said children,
the survivors to inherit,"—it was held the time of the death
of the devisees, or their marriage, was the point of time at
which the contingency was to determine and the right became
absolute, and not the death of the testator. The court, how-
ever, says : " In the case of an immediate devise, it is generally
true that a devise over in the event of the death of the pre-
ceeding devisee refers to that event occurring in the lifetime
of the testator." The words of the devise in this case, how-
ever, clearly show that it was the intention of the testator that
the bequest should not be immediate, but should take effect
only when the legatees should arrive at age or should marry,
and by this circumstance is distinguished from an immediate
bequest or devise. There are many cases which show that
where there is another point of time other than at the death
of the testator, the word " dying " may be referred to the
event of legatees dying in the interval between the testator's
decease and the period of vesting in possession. These cases,
however, do not contradict the general construction given to
the words " in case of death," but are confirmatory of it. The
cases, although not the same, are analogous.

In the case of *Biddle's Estate*, 28 Pa. 59, the bequest was
as follows : " I give to my daughter Annie E. Biddle every-
thing of which I die possessed. In the event of my daughter's
death without children, I give and devise to Dr. John B.
Biddle, George W. Biddle, and Chapman Biddle." The be-
quest to Annie E. Biddle was held to be absolute, she having
survived the testatrix. An appeal was taken to the supreme
court of the State, and the decree below was affirmed; the
court deciding that the will gave the daughter an absolute
estate, and that there was nothing in the will to reduce it.
The court says : " The first gift is absolute, and the subsequent
clauses make no profession of reducing it, and must therefore
be taken as intended for its failure to take effect by Annie's
death before her mother."

A consideration of the cases to which I have referred es-

tablishes, in my judgment, the correctness of the rule of interpretation laid down in Hawkins on Wills, 254, which is : "Where there is a bequest to one person, and, in case of his death, to another, the gift over is construed to take effect only in the event of the death of the prior legatee before the payment or period of distribution, unless an intention appear to the contrary,"—a rule the principle of which is so luminously expounded by *Lord* Brougham in the case of *Home* v. *Pillans*, 2 Mylne & K. 15, hereinbefore referred to.

I consider the meaning of the words " in case of death " so firmly established by judicial decisions, by precedents and authority, that I am not at liberty to give them any other construction than that which they have uniformly received. It has been well remarked that although the intention of a testator is the governing principle with the court when looking at his will, yet the court is bound by precedents and authority, and will not proceed on arbitrary conjecture in settling its construction. *Kingsland* v. *Rapelye*, 3 Edw. Ch. 1. Had the estate given and devised by Israel D. Jones to his two sisters consisted only of personal estate, I could have no doubt that the interest which they took under the will was absolute in case they survived the testator, and that, having survived him, an absolute interest in the personalty immediately passed to them upon his death, which absolute interest could not afterwards be devested or in any manner affected by the words "in case of the death of either of them," occurring in the will ; in other words, that whatever might have been the actual intention of the testator,—which it is impossible for us to know with absolute certainty according to precedents and authority, which create judicial certainty,—the words " but in case of death of either of them it is to go to their children " must be construed as meaning death of either of them in the lifetime of the testator. Does this rule apply to devisees of real estate? Hawkins, in his treatise on Wills, page 255, says it does.

In *Whitney* v. *Whitney*, 45 N. H. 312. the court decides that a devise to four persons, their heirs and assigns, with a devise over should either one or more of them die, was a devise to

take effect in possession immediately upon the testator's death; and that the words of survivorship were to be regarded as providing for the case of the death of any of the devisees in the testator's lifetime. See also *Gee* v. *Mayor*, 10 L. & Eq. 455; *Ashford* v. *Haines*, 11 L. & Eq. 152; *Brimmer* v. *Sohier*, 1 Cush. 118. It was decided in *Briggs* v. *Shaw*, 9 Allen, 516, that a devise of real estate to A, his heirs and assigns, and, in case of his decease, to the heirs of C who might be living at the probate of the will, their heirs and assigns, share and share alike, was a devise to A in fee if he survived the testator. To the same effect was the decision in the case of *Ash* v. *Coleman*, 24 Barb. 645. In the case of *Hill* v. *Hill*, 5 Gill & J. 87, where the devise was to two daughters during their single lives, and, after their death or marriage, to a grandson, O, to him, his heirs and assigns forever, and, in case of his death, to a grandson, V; and where, upon the death of the testator, the two daughters entered, and one married and the other died, whereupon O entered and continued in possession until his death,—it was held that the true construction of this will was that as O was living at the time of the termination of the estate devised to the two daughters, he took an absolute estate in fee; and that the limitation over to V failed to take effect.

Upon the authority of the foregoing cases, and in conformity with the general uniform tenor of decisions upon this subject, I am of opinion that, upon the death of Israel D. Jones, his sisters Sarah J. Webb and Elizabeth Jones, who survived him, under and by virtue of his will, took an absolute interest in both the personal and real estate devised to them; that the word "estate," in the will, carried the entire interest which the testator had in both species of property; and that the interest which passed to them under the will was not lessened or in any manner qualified by the words "but in case of the death of either of them it is to go to their children;" and that these words meant dying in the lifetime of testator, and not after his death.

The petition is therefore dismissed, with costs.