JOSIAH MARVEL, Administrator *cum testamento annexo*, of the estate of Thomas H. Savery, deceased,

*vs.*

WILMINGTON TRUST COMPANY, SARAH P. SAVERY, THOMAS H. SAVERY, WILLIAM H. SAVERY, HELEN SAVERY TAYLOR, WALTER S. TAYLOR, ANN P. SAVERY THAYER and HORACE H. THAYER, JR.

### *New Castle, May 22, 1913.*

A gift by will of real or personal property to A., and in case of his death to B., or a like provision in a gift to take effect in possession at a time subsequent to the testator's death, is an absolute gift to A. if he is surviving at the testator's death, or at the time the gift is to take effect; but, if he is not, B. takes the gift by substitution.

Where a gift is made by will to A., and in case of his death to B., if the contingency of A.'s death can be referred to a later period than during the lifetime of the testator, the court will so construe it.

Where a gift was made by will to H., and in case of her death "the portion of my estate belonging to her resulting from the above specified bequests" shall "immediately revert" to others named, "their heirs and assigns," "or their legal representatives," the provision is to be treated as meaning that if H. die during the testator's lifetime the property shall go to the others, and if she survives him she takes the gift absolutely.

In a gift by will to H., and in case of her death to "revert" to and become the property of certain others, the word "revert" is equivalent to "pass to" or "go to," and does not imply that H. is not to receive the property absolutely if she survive the testator.

An attempt to create by will a trust for the testator's daughter is ineffective, where the only duty imposed on the trustee was to deliver the property to the beneficiary on certain conditions; and since no useful purpose was served by the trust, being a mere dry trust, it is invalid, and the beneficiary takes free from the trust.

The fact that the beneficiary of a trust created by will is a married woman does not of itself make it an active trust, if it would not otherwise be such, so as to take it out of the rule that the beneficiary of a mere dry trust will take free from the trust.

BILL BY ADMINISTRATOR *C. T. A.* IN THE NATURE OF A BILL FOR INSTRUCTIONS. The complainant was the administrator *cum testamento annexo* of Thomas H. Savery, deceased, and filed this bill for a construction of the will and instructions concerning distribution of the testator's estate. By the will, after directing the payment of his debts and funeral expenses, making provision for his wife, disposing of certain personal property and setting forth a list of investments and securities, the testator provided, as follows:

"Eighth. I give and bequeath unto each of my four children, William H. Savery, Helen Savery Taylor, Thomas H. Savery, Jr., and Ann Pym Savery Thayer, equally one-fourth ($\frac{1}{4}$) interest in the above named properties and securities, with the understanding that the portion thereof that will belong to my daughter Helen Savery Taylor will be held in trust for her use and benefit, by the Wilmington Trust Company, of Wilmington, Delaware, or a trust company chosen by a majority of my four children named above, or their respective heirs and assigns. In case of a unanimous vote on the part of my three children, William H. Savery, Thomas H. Savery, Jr., and Ann Pym Savery Thayer, to collectively sell or dispose of their holdings in any one or more of the companies, properties or investments in which they hereby become interested, then upon written request of Helen Savery Taylor, the Wilmington Trust Company, or the duly appointed trustee, will and must release to her her stocks, bonds and other securities in such company or companies as my other three heirs above mentioned have by said unanimous vote elected and decided to sell or dispose of their respective interests therein, and Helen Savery Taylor's share of the proceeds thereof placed to her credit in the Wilmington Savings Fund Society.

"Ninth. In case of the death of my daughter, Helen Savery Taylor, the portion of my estate belonging to her resulting from the above specified bequests, shall revert to and become the property of her brothers and sister named in this will, their heirs or assigns, immediately, one-third ($\frac{1}{3}$) to each of her two brothers, William H. Savery and Thomas H. Savery, Jr., and one-third ($\frac{1}{3}$) to her sister, Anne Pym Savery Thayer, or their legal representatives."

The children of the testator had not chosen a trust company to serve as trustee in the place of the Wilmington Trust Company in carrying out the provisions of the eighth item of the will, and that company made demand on the complainant to pay, transfer and deliver to it as trustee for Helen Savery Taylor a one-fourth interest in the estate remaining in his

hands for distribution. Helen Savery Taylor also made demand upon the complainant to pay, transfer and deliver to her, and not to the Wilmington Trust Company as trustee, the one-fourth interest in the estate free, clear and discharged of all trusts under said will.

Owing to these demands the administrator was unable to finally distribute and dispose of the one-fourth interest in the estate bequeathed for the benefit of Helen Savery Taylor. All of the defendants appeared and filed answers admitting the facts alleged in the bill, and submitted themselves to such orders or decrees as the Chancellor should make, and the cause was heard on bill, answers and exhibits.

*Josiah O. Wolcott,* for the complainant.
*William S. Hilles,* for the defendant, Wilmington Trust Co.
*Robert H. Richards,* for the defendant, Helen Savery Taylor.
*Caleb E. Burchenal,* for the other defendants.

THE CHANCELLOR. The questions raised and discussed thoroughly and learnedly were (1) whether the interest given to or for the benefit of Helen Savery Taylor, was for life, with remainder to his other children at her death, or an absolute estate, and (2) whether the trust which he attempted to make respecting the interest given to or for her benefit was valid within the established rules of law applicable to such cases.

1. As to the quantity of her estate. This question is raised by the ninth item of the will, and particularly by the use of the words "in case of the death of my daughter," and by the use of the word "revert" and the other language of the item. The general rule, admittedly well established, is that a gift to A. and in case of his death to B., is an absolute gift to A., if he survives the testator, and if he does not then B. takes the gift by substitution for A., and this applied to gifts both of real and personal property. *Hawkins on Wills,* 254, 256; *Jones v. Webb,* 5 *Del. Ch.* 132; *Rickards v. Gray,* 6 *Houst.* 232, 264. As a corollary to this there is the rule that where the contingency of the death of the legatee can be referred to another period than during the lifetime of the testator, the court will not hesitate

to so construe it. 1 *Underhill on Wills*, §342. So where the gift is to take effect in possession at a period subsequent to the testator's decease, it is considered that the words "in case of death" relate to the event of the legatee dying in the interval between the testator's death and the period of its vesting in possession. 1 *Jarman on Wills*, 752–760.

It is urged that in item ninth there is such an intention to fix some period later than the death of the testator as that to which the contingency of the death of his daughter relates. This intention, it is claimed, appears from the words of futurity used, which show that until the death of the testator there could be no portion of his estate belonging to his daughter Helen, and therefore the contingency must arise subsequent to his decease. But this is not a sound conclusion. No legatee takes anything until after the death of the testator, and every legatee takes his gift immediately upon the death of the testator, if there is nothing to indicate a suspension of the vesting until a later period. A gift to A., and in case of his death to B., bestows nothing on either A. or B. until the testator's death, and yet the general rule above stated applies to such a gift. Clearly, then, the testator by the use of the words, "the portion of my estate belonging to her resulting from the above specified bequests," referred to the property bequeathed to his daughter Helen by prior provisions of the will, and provided against the contingency of her dying in his life time by giving such property to his other children.

Admittedly the words, "revert to and become the property of," are to be treated as meaning "pass to," or "go to," and the following cases are cited in support of such a view: *Gee v. Manchester*, 17 *Ad. & El. (N. S.)* 737; *McDowell v. Stiger*, 58 *N. J. Eq.* 125, 42 *Atl.* 575; *Beatty v. Trustees, etc.*, 39 *N. J. Eq.* 452; *Bennett's Estate*, 134 *Cal.* 320, 66 *Pac.* 370; *Johnson v. Askey*, 190 *Ill.* 58, 60 *N. E.* 76. No different construction results from the use of the word "immediately," which evidently refers to the death of the testator. Indeed, it has no particular significance in this item of the will; nor have the words "their heirs and assigns," or the words "or their legal representatives." There is, then, in this item nothing to take it out of the general

rule which would make the period of payment the period before which the contingency must happen in order to make the substitutionary gift effective, and as the daughter, Helen, survived the testator and was, therefore, alive at the period when the legacy took effect, viz., at the death of the testator, her gift was absolute.

2. Was the property given to the daughter Helen the subject-matter of a valid trust? This trust is found, if at all, in the eighth item. Clearly the testator intended by this item to create a trust. Admittedly the first sentence of this item was ineffective to create a valid trust, because it was a simple or dry trust, and standing alone the established rules of law, whether of statutory origin, or not, would not permit such a trust to be created. As was said in *Jamison v. McWhorter*, 7 *Houst*, 242, 251, 31 *Atl.* 517, a case in the Court of Errors and Appeals, "a trust estate cannot be supported where no active duty is to be performed by the trustee, and the whole management of the property is in the hands of the *cestui que trust*." See, also, *Flanagin v. Daws*, 2 *Houst.* 476; *Doe dem. McMullen v. Lank*, 4 *Houst.* 648.

Indeed, this is not disputed. But it is urged that a trust is valid if the separation of the legal and equitable estate is needed to effectuate some useful purpose, as, for instance, if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division, or until a request for a conveyance is made. *Perry on Trusts*, §305; *Lewin on Trusts*, 210. If it clearly appeared that the useful purpose of the trust was to protect the interests of all his children, or to protect the share given to or for his daughter Helen or to protect the estate generally until such time as his four children could agree on the sale of his property, or of any definite portion or portions thereof, then it would probably be a validly created trust. It is claimed by the trustee that one purpose to be effected by the trust was to prevent the testator's daughter Helen from having a power of sale of her share of the property, except with the consent of her brothers or sister, and that the legal title to her share of the property was vested in the trustee and not in her, until such assent be given. But

does such a purpose clearly, or reasonably, appear? I think not. The testator had indicated rather vaguely and ineffectively in prior parts of his will a desire that there should be harmony and unanimity of action in disposing of certain portions of his property, which he specifically mentions in paragraph six. Believing that he had vested in the trustee the legal title to the portion of this property given in trust for his daughter, he made sure that the co-operation and harmony of action between his children should be effective by requiring the trustee to hand over to her her property, or any portion of it, so that she could join her sister and brothers in selling her property. Instead of imposing a duty on the trustee to withhold from her her property until the other children should direct a delivery of it to her, there was a limitation on the power of the trustee to withhold from her such property, and there was imposed on the trustee a duty to then hand over to her her property so that she could sell it. In other words, the testator intended that the trustee must, when required by all the children, deliver to the daughter, Helen, her property, or any portion of it. It was not a donation of power to withhold control, but the imposition of a duty to surrender it. In this way the unanimity would be secured, and such concert of action could not be defeated by a refusal of the trustee to sell any particular parcel of property which they all agreed should be sold, and so required the trustee to deliver to his daughter, Helen, her property when such unanimity existed with respect to any such property.

In effect, the testator in the eighth item said: I give to the Wilmington Trust Company an undivided one-fourth of the property mentioned in paragraphs six and seven, to be held by it in trust for my daughter Helen, and the trustee is required to turn over to her any portion of such property, or the evidence of the ownership thereof, whenever my other three children and my daughter, Helen, shall have agreed together to sell such property, or any portion thereof, and when sold the proceeds arising from the sale of my daughter Helen's share of the property shall be deposited to her credit in the Wilmington Savings Fund Society. So stated, the trust is clearly invalid. This

is confirmed by the requirement that the proceeds of sale should be deposited to her credit in the Wilmington Savings Fund Society, where, of course, either immediately, or after a lapse of some interval of time, longer or shorter, she could withdraw it and have absolute control and disposition of it. It is not stated in the will as to who is to make the deposit or why it should have been required. But it was not even suggested that a trusteeship was necessary in order to receive the proceeds of the sale of any property intended to be part of the trust estate for the purpose of depositing such proceeds in the bank to the credit of his daughter.

If the gift to his daughter Helen was immediate and absolute, and not a life estate with remainder to his other children, then, of course, it was not the purpose of the trust to preserve the trust estate for those entitled in remainder. Neither does the fact that the *cestui que trust* was a married woman of itself make that an active, and so, a valid trust, which would have been invalid if the beneficiary were other than a married woman. There is no evidence of intention to protect the beneficiary from the control or interference of her husband with her financial or property affairs, and such intention cannot be presumed. Neither is there now the need of such protection, such as existed prior to the various provisions of statutes to protect the separate estate and interest of married women.

The conclusion, then, is that the testator undertook to do what the law says he could not do as to his property, viz., create a trust without imposing on the trustee active duties respecting the trust property, and without stating, or indicating, any useful purpose to be carried out respecting the property given in trust. Helen S. Taylor is, therefore, entitled to have and receive her portion of the estate free of trusts, and her portion is one equal portion thereof absolutely.