HORACE B. JAMES, Administrator of Martin J. Morgan, deceased,

*vs.*

MARY E. JAMES, MARTIN R. MORGAN, and others.

*Sussex, Dec.* 23, 1927.

*James M. Tunnell*, for complainant.

*Daniel J. Layton*, for Martin R. Morgan.

THE CHANCELLOR. Ignoring for the moment the interpolated language found in this will, it is of course plain that the testator intended his son Martin to enjoy both a fee-simple interest in one-half of the real estate and an absolute interest in one-half of the personalty. The words "to them and their heirs for ever" and the provision for a possible appraisement and division are conclusive on that point.

Does the interpolated language have the effect of changing this plain meaning? If so, then Martin's unequivocally absolute interest in both the realty and personalty is, according as this meaning or that is given to the interpolation, to be either taken away from him altogether, or cut down to a lesser estate. Does the interlined language mean that Martin's interest was to be taken away from him altogether? It can hardly mean that, for the reasons: First, because such a result is entirely out of harmony with the scheme of equal division of his estate which the testator showed he wished to be made between his two children, a scheme which, after the interlined language was used, the testator still showed he had in mind when he provided for an appraisement and

division in case of disagreement; and, secondly, because even in the interlined language itself the interest which was "to be kept in for his children" is spoken of as the "Martin R. Morgan interest," a manner of description which is not consistent with the idea that Martin was to be deprived of all beneficial interest. I conclude therefore that Martin, notwithstanding the interlineation, is to be regarded as having received a beneficial interest of some kind in the half of his father's estate.

What is the extent of that interest? As before stated, in the absence of the interlineation, it was an absolute interest in the personalty and a fee simple in the realty. Is it to be cut down to a less interest by the interpolated clause? That clause, in order to cut down the absolute interest, must be so strong in its statement or implications as to show clearly that the testator meant it to have that effect. The fact that the language in question is interlined in the will would seem to show that it was written in after the original was completed, and I therefore regard it as an expression made after language bestowing an absolute interest in Martin had been first used. This being so, the general rule of construction is applicable by which an absolute estate given in one part of a will in clear and decisive terms, cannot be cut down or limited to a lesser estate by subsequent provisions of the will, unless the part providing for the lesser estate is expressed in as clear and decisive language as the part giving the estate in fee. *Page on Wills*, § 574; 2 *Alexander, Commentaries on the Law of Wills*, § 932. In *Jamison, et al., v. Craven, Ex'r., et al.*, 4 *Del. Ch.* 311, Chancellor Bates applied the same principle of construction in determining that the absolute right of disposal incident to an estate in fee simple, assuming it could be legally qualified, nevertheless will not be presumed to have been so qualified unless a clear and manifest purpose to that effect appears on the face of the will.

Does the interlined language clearly show that a paring down of Martin's interest was intended? It certainly does not expressly so indicate; and if it does so by implication one looks in vain for any language upon which to hinge a thought as to the extent to which the paring down shall go or a suggestion concerning the point at which the process shall stop. Was his fee to be cut to the point of leaving him a life-estate? There is no language in the will

which countenances that idea, such as is so frequently found in the reported cases where the event of death is mentioned in such a way as to show an intention that the end of the beneficiary's life marks the boundary of his interest. In another part of the will the testator created a life interest in his wife by apt and plain language—"for the rest of her natural life and no longer" is his expression, with remainder over to his two children. If he had intended Martin to take only a life interest with remainder over to his (Martin's) children, the testator would have expressed such intent in unmistakable terms if he had used for the pattern of his phraseology the same formula of language he had previously employed. He not only omitted to use such language giving a life interest to Martin; he failed to use any form of expression from which such a life interest can be inferred. For the court to say that, notwithstanding an absence of indicating language to that effect, the testator meant Martin to take a life estate, would be for the court to hazard a mere guess. Why not make the guess that instead of Martin's interest being cut down to one for life, the testator meant it to be cut to one for years? If so, then the question would next arise, for how many years? The interpolated language is thus so obscure in meaning as to fail completely to reveal the thought which the testator had in mind when he wrote it. To allow such obscurity of expression to cut down the absolute interest which the original language unmistakably conferred, would be to offend against the general rule of construction hereinbefore referred to.

It is suggested that the interpolated language, instead of meaning that Martin's interest was to be whittled down to one for life, might mean that the testator wished Martin to keep it intact in order that his children might ultimately benefit by it and that in this way the testator merely laid upon Martin a sort of precatory injunction that he keep the estate in hand for transmission to his children. Whether this is a correct view or not, need not be determined. It is, however, a view which speculation might attribute to the language with nearly, if not entirely, as much persuasion as the view that what was intended was the creation of a lesser estate of some kind in Martin with remainder over.

In order to ascribe any definite meaning to the interlined

expression, we are driven to rely on pure speculation, a sort of thing which falls far short of yielding that degree of clearness which ought to be present before an absolute interest positively bestowed should be permitted to suffer a reduction to something less. The interpolated language therefore must be ignored in the interpretation of this will.

It is also suggested that the language in question might have been intended to create a trust. In response to this suggestion, all that can be said is that the testator might perhaps have so intended it. But again we must resort to the speculation of a guess in order to conclude that such was the intent. If a trust was intended, what were its terms? If Martin's children were the sole beneficiaries in the trust, then it being a dry trust and therefore immediately executed, Martin would have no beneficial interest in it, notwithstanding the testator, in the language creating it, referred to the corpus of the supposed trust as the "said Martin R. Morgan interest." This language, as before noted, clearly shows that Martin was still regarded as having an interest of some kind, and was not to be cut out entirely from participation in the testator's estate. If it be said that the trust was for Martin in his lifetime or for a lesser term and then for his children, we come back to the proposition above discussed, namely, that Martin's asbolute interest would have to be cut down to something less, a proposition which because of the uncertainty and ambiguity of the language cannot be supported.

My conclusion is that the interpolated language is to be ignored as of interpretative significance. The complainant should therefore make distribution between Mary E. James and Martin R. Morgan in equal shares, each to take an absolute right.

Let a decree be prepared accordingly.