# Richmond.

W. D. Simmons and J. E. Woodfin, Committees of Regina P. Simmons v. Edgar G. Gunn and Others.

March 19, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*W. J. Henson* and *Smith & Gordon,* for the appellants.

*Jo Lane Stern, C. M. Chichester* and *E. M. Long,* for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

We find no error in the decree from which this appeal is taken and therefore it will be affirmed.

The facts of the case and the reasons which support our conclusion are sufficiently stated in this opinion of the trial judge, Honorable William A. Moncure:

"The will of James F. Gunn was probated in this court on February 2, 1925, and consists of two paper writings. The original will, dated August 30, 1912, and a codicil dated October 1, 1924, are both wholly in the handwriting of the testator and signed by him.

"The single controversy here is what estate Mrs. Regina P. Simmons takes under the will and codicil.

"So much of the will as is necessary for the consideration of this matter is the eleventh item of the will and the codicil. They are as follows:

" 'Eleventh Item: I also direct that the residue or proceeds from my estate also personal estate be equally divided among my six children, viz: Edgar G. Gunn, Fred F. Gunn, E. Zollie Gunn, Mrs. Regina Simmons and Mrs. William Gray Wattson, the two daughters, and C. LeRoy Gunn, by my last wife, and a resident of Baltimore, Md.

" 'Richmond, Octo. 1-24.
" 'Codicil to my will.
" 'Referring to my will which is in my lock-box Planters Nat. Bank. Item: Where it mentions the distribution made by myself to my children, I will say this in reference to my daughter, Regina P. Simmons, who is in a hospital for treat-

ment in a demented condition, with no prospects of recovery. I wish to say this the portion left to her I request it to be placed in the Va. Trust Company for distribution and name the Virginia Trust Co., as trustee, as long as she should live then at her death to revert to my several children living he or she. So under the condition of things her condition I think it best for her interest requesting my executors to act accordingly and I am sure Mr. H. Jackson will look after her interest.

"'This codicil is written entirely by myself.

"'JAMES F. GUNN.'

██ "While decided cases are helpful, they are not necessarily controlling, because no two wills are alike; the words are different; the surrounding circumstances may be different; so that it may be truly said that each will is a law unto itself. However, after considering the entire will, the intention of the testator and the words used to express that intention, the court must give effect to that intention so expressed in the words of the testator, unless it violates some rule of law, or is against public policy.

"In *Conrad* v. *Conrad's Ex'or*, 123 Va., at p. 716, 97 S. E. 336, the rule is thus stated: 'The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy.'

"That intent is the polar star to guide in the interpretation of all wills, see also: *Roberts* v. *Scyphers*, 128 Va. 87, 104 S. E. 698; *Bare's Ex'ors* v. *Montgomery*, 143 Va. 307, 130 S. E. 230; *Wornom* v. *Hampton, etc.*, 144 Va. 541, 132 S. E. 344; *Thomas* v. *House*, 145 Va. 742, 134 S. E. 673.

"Chief Justice Prentis, in the case of *Wornom* v. *Hampton, etc., supra,* expresses the rule as follows: 'All of the refinements of the law must yield to the power of the testator to

dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial.'

"Other authorities to the same effect could be cited but the above suffice.

"The will must be construed as a whole, and effect must be given to all of the clauses, and all of the words, if it is fairly possible to do so, in view of the language used.

"In 1 Schouler on Wills, section 487, the author says: 'A codicil is a part of a will, but with the peculiar function annexed of expressing the testator's afterthought or amended intention. The codicil should be construed with the will itself; and from its very nature it may as a context confirm, alter, or altogether revoke an intention expressed in the body of the instrument to which it is annexed.'

"In Harrison on Wills and Administration, section 193-(6), at page 385, the author says: 'But in the case of a codicil to a will, the papers are executed at different times and the very object of the codicil very often is to make an alteration in the dispositions of the will. It is more or less to be expected then that there shall be some conflict between a codicil and a will, and, to the extent that there is a conflict, the provisions in the codicil prevail.' Citing: *Dawson* v. *Dawson,* 10 Leigh (37 Va.) 602; *Hooe* v. *Hooe,* 13 Gratt. (54 Va.) 245; *Gordon* v. *Whitlock,* 92 Va. 723, 24 S. E. 342; *Miller* v. *Buchanan,* 114 Va. 76, 75 S. E. 773, and other cases.

"So much of a will as is inconsistent with the codicil is revoked. *Bosley* v. *Wyatt,* 14 How. 390, 14 L. Ed. 468.

"What is the meaning of the word 'revert' as used by the testator in his codicil? It is not an accurate word but evidently it was his intention that the word 'revert' meant 'pass to,' or 'go to.'

"The word 'revert' has been construed in many cases to mean 'to go to' or 'pass to.' See *Brown* v. *Guthery,* 190 N.

C. 822, 130 S. E. 836; *Marvel* v. *Wilmington Trust Co.*, 10 Del. Ch. 163, 87 Atl. 1014; *In re Briggs' Estate*, 186 Cal. 351, 199 Pac. 322; *In re Owen's Will*, 164 Wis. 260, 159 N. W. 906; *Goerlitz* v. *Malawista*, 56 Hun. 120, 8 N. Y. S. 832; *Beatty* v. *Trustees, etc.*, 39 N. J. Eq. 463.

"With these observations in mind it is necessary to find out the testator's intent, and this must be done from the words used by the testator.

"It is clear from the eleventh item of the will that Regina P. Simmons took an undivided one-sixth part of the residue of his estate in absolute right. Did the codicil of October 1, 1924, alter or reduce the estate so given to Mrs. Simmons by the eleventh item of the will? I think it did. The codicil starts out with reference to his will and the item relating to the distribution of his estate among his children. The codicil starts as follows: 'Referring to my will which is in my lock box, Planters National Bank. Item. Where it mentions the distribution made by myself to my children.' Manifestly the testator was referring to the will of August 30, 1912, and to the eleventh item thereof, whereby the residue of the estate was given to his six children in absolute right. The codicil next makes reference to his daughter, Regina P. Simmons and her demented condition with no prospects of recovery. No doubt he referred to her demented condition as a reason for making the change so to be made in the codicil he was then writing. Then he says in his codicil: 'I wish to say this the portion left to her I request it to be placed in the Virginia Trust Company for distribution and name the Virginia Trust Company as trustee as long as she should live then at her death to revert to my several children living he or she.'

"Here it appears to me that the portion he had left to Regina P. Simmons he desired, in the distribution of his estate by his executors, to be placed with the Virginia Trust Com-

pany as trustee for her as long as she should live, and, at her death, he desired the portion so placed in trust for the life of Regina P. Simmons to pass or go to his several children living at her death. This thought or construction seems clearly consistent with the language used. What did he mean in the codicil where he said: 'So under the condition of things her condition I think it best for her interest requesting my executors to act accordingly and I am sure Mr. H. Jackson will look after her interest?' When he requested his executors to act accordingly he meant to direct them in the distribution of the estate to place it with the Virginia Trust Company as trustee. When he said: 'I am sure Mr. H. Jackson will look after her interest,' he only meant that the Virginia Trust Company (of which Mr. H. W. Jackson is president), as trustee, would safeguard the trust and see to it that the interests of Mrs. Simmons would be properly looked after.

"My conclusion, therefore, is that as to the eleventh item of the will and the codicil they conflict; that the purpose and meaning of the codicil was and is to reduce the absolute estate given in the eleventh item of the will to Mrs. Regina Simmons to a life estate in Mrs. Simmons, with remainder over to the children of the testator living at Mrs. Simmons' death, and for this purpose he directed the estate to be placed with Virginia Trust Company, as trustee, to effectuate the trust so created.

■■ "However, it is insisted on behalf of Mrs. Simmons that the estate created by the codicil, read in connection with the estate given her in the eleventh item of the will, is—

"1. Void as an executory limitation for uncertainty.

"2. Void as a remainder because there can be no limitation after a fee simple.

"In view of the fact that it appears from the language of the codicil that it was the intention of the testator to revoke the item eleven of the will with reference to the estate given

to Mrs. Simmons, and only leave her a trust estate for life in the one-sixth part of his estate, with remainder to the children of the testator living at the death of Mrs. Simmons, and there is no provision in the trust estate whereby Mrs. Simmons could use, or that there could be used for her, any part of the *corpus* thereof, but only the income, such claim on behalf of Mrs. Simmons must be denied."

*Affirmed.*