MIRIAM C. BOWER, Executrix of the Estate of Charles N. Bower, deceased,

*vs.*

ROBERT H. PRINCE and MARION S. PRINCE, his wife, LEWIS B. ALLEN, ALVAN ALLEN, HORACE S. ALLEN, and CHARLES B. ALLEN.

*New Castle, December 13, 1944.*

*Henry R. Isaacs,* for complainant.

*Leslie H. Gluckman,* for Robert H. Prince and Marion S. Prince, respondents.

*W. Thomas Knowles,* for Lewis B. Allen, Alvan Allen, Horace S. Allen, and Charles B. Allen, respondents.

PEARSON, Vice-Chancellor: The purchasers under an agreement of sale of real estate have declined to accept a conveyance and to complete payment of the purchase price, and for excuse say that the seller is unable to convey a marketable title to one of the lots in question. Complainant, the seller, asserts that her deceased husband, Charles N. Bower, was seized in fee of the lot at the time of his death, and that she is empowered under his will to convey it in fee. The purchasers contend that his estate was divested upon his death, and if they are right in this respect, their refusal to perform their agreement was justified. Charles' interests in the lot were derived from the will of his father. The provisions of that will occasion the present controversy. It reads, in part, thus:

"Second I give and bequeath to my faithful and devoted wife, Justine Bower all of my property of all kinds, where-ever situate, and all my rights, and titles of all kinds, to have and to hold, or to dispose of as she may decide (provided she does not marry again as here-in-after set forth) during her entire life-time—

"Third I direct that at the death of my said wife, the balance of my estate, that may then remain, shall be evenly divided between my son, Charles N. Bower and my daughter Tillie B. Allen, share and share alike (both subject to the condition, as set forth in the fourth and fifth articles of this document) and that my said son shall have the plot of ground lying immediately South of his property on the Boulevard, including the Automobile House rating it at eighteen hundred (1800) dollars, plus simple interest at 5% per annum from

April 1st one thousand-nine-hundred and ten (1910) and that my said daughter shall have the house and lot, known as No. 706 Washington Street, in the City of Wilmington rating it at thirty five hundred (3500) dollars, and I direct that this last named property shall not be sold, Mortgage, or in any way encumbered, by my said daughter, but that the income shall be hers to dispose of as she may elect (in case she does not conclude to occupy it herself) and I further direct that at her death, it shall be sold, to the best advantage, and the proceeds be evenly divided between her children share and share alike—

"Fourth   I direct that in case my said wife shall marry again, that all of my estate, which may then remain shall be divided as follows; one-half (½) of all to be given to my said wife and the other half to evenly divided between my said son and my said daughter, share & share alike, and in that case the stipulation as set forth in the third article, respecting the lot on the Boulevard and the house & lot Known as 706 Washington Street shall be strictly enforced.

"Fifth   I direct further, that in case my said Son shall die childless, and prior to the death of his said wife, Miriam, that such sum of my estate as shall remain in the names of my said son at his death, shall be invested, in trust, through the Equitable Trust Company of Wilmington and that the said Miriam shall have the proceeds of the same so long as she lives and remains his widow and that at her death or re-marriage this principal sum shall be paid back to my estate, and be evenly divided between my grandchildren share & share alike— The implicit confidence I have in my said son and his said wife prompts me to believe that they will both direct this in accordance with my direction here-in set forth  *  *  *."

Charles died childless, having survived his mother and father (the testator). His sister Tillie is living. His wife brings this suit in her capacity as executrix under his will. Joined as respondents are the purchasers under the agreement and, as well, four persons who are described as the only grandchildren of the testator, Charles' father. The last mentioned respondents have filed an answer stating that they have no desire to become active participants in this litigation and submit themselves to such decision as this court shall consider just and right.

The purchasers concede that, disregarding the fifth article, the language of the third article would suffice to devise the Boulevard property to Charles, in fee. The effect of

the fifth article is the point of dispute between the parties. The seller says it does not cut down the estate in fee previously given; whereas, the purchasers say that it makes defeasible the estate given Charles and that the event has occurred upon which divestment becomes operative; namely, Charles' death, childless, prior to the death of this wife.

Proceeding now to an examination of the language of the will, the testator directs, in the third article, that the balance of his estate remaining at the death of his wife "shall be evenly divided between" his s o n Charles and daughter Tillie. In the same sentence, he directs that Charles shall have the Boulevard real property, and Tillie, the Washington Street property. This direction seems plainly to be no more than a specification of particular properties which should be included in the respective shares of the son and daughter, in the division between them of the balance remaining at the death of the testator's widow. This is indicated not only because the expression "balance of my estate, that may then remain," would normally include all real and personal property remaining; but also because the provisions for "rating" the real properties at stated monetary amounts almost necessarily means that the properties should be appraised at these values in making an even division of the entire balance of the testator's estate. No other sensible meaning of the rating provision has been suggested.

The shares of the testator's estate given his children are in terms "subject to the condition as set forth in the fourth and fifth articles." Thus, reference to these two articles is an integral part of the language of gift of the balance of the estate. In the fifth article, the testator directs that if Charles shall die childless, prior to the death of his wife, "such sum" of the testator's estate as shall remain in the "names" of his son at the latter's death shall be invested, in trust. The stated contingency has occurred, and I see no sufficient reason why the gift over, in trust, should not include the Boulevard property which remains in the name of Charles.

The expression "such sum of my estate" plainly means "such amount of my estate". While the words "invested," "principal sum", and "paid back" are frequently used to refer to money or personalty; where they are used in such manner as to be referable to realty, they should be so construed, unless the context clearly indicates a narrow construction. Compare: *Neblett v. Smith,* 142 *Va.* 840, 128 *S.E.* 247. The present context, particularly the express correlation of the third and fifth articles, does not evince a restricted usage which would exclude the realty. The sentence of the fifth article reading "The implicit confidence I have in my said son and his said wife prompts me to believe that they will both direct this in accordance with my direction here-in set forth" is indeed, ambiguous. The preceding provisions, however, are couched in terms of a definitive disposition, not in terms of a mere request, and are of themselves adequate to create the future interests which they describe. Possibly the added sentence indicates that the testator believed that some affirmative act on the part of his son and daughter-in-law was necessary to make effective the gift over. Whatever may have been in his mind, the sentence is not clear enough to vitiate the otherwise valid limitations. Compare: *James, Adm'r., v. James,* 16 *Del.Ch.* 34, 139 *A.* 787.

It follows that complainant is unable to convey a fee simple title and that the bill must be dismissed.

A decree accordingly will be advised.