MARY E. CARROW,

*vs.*

JOHN E. THROPP, 3d and GENEVIEVE A. THROPP.

*New Castle, July 10, 1946.*

*Richard S. Rodney,* of the firm of Morris, Steel, Rodney, Nichols & Arsht, for complainant.

*J. Caleb Boggs,* of the firm of Logan, Duffy & Boggs, for the respondents.

SEITZ, Vice-Chancellor: The decision on this bill by the seller of certain real estate to have her contract of sale specifically enforced requires a determination of the interest which the complainant seller received in such real estate under her father's will.

Complainant's father, Theodore Carrow, died testate on October 19, 1921, the owner of the real estate here involved. His will provided, *inter alia*:

"I will and bequeath to my beloved wife Adeline Carrow and my daughter Mary E. Carrow my House and premises situate on the

west side of Main Street in the Town of St. Georges, together with all of my personal estate, such as Household furniture, Life Insurance and all monies in bank and from any source of whatsover Kind belonging to my estate to my beloved wife Adeline Carrow and my daughter Mary E. Carrow. * * *

"I will and bequeath to my children Willard J. Carrow, John F. Carrow, Franklin D. Carrow, Harry H. McCally, Sally Clark, and Emma Philip, the sum of five dollars each—

"I further request and direct at the decease of my wife, the one half interest I have made of all my estate in this my will to my wife, shall revert to my daughter Mary E. Carrow.

"It is my wish and desire, that my daughter Mary E. Carrow, devote unlimited care and attention to the comfort of my wife during her life.

"I do hereby appoint and name my daughter Mary E. Carrow, Executrix of this my will and Testament."

Adeline Carrow, widow of the testator, died October 21, 1923.

The daughter, Mary E. Carrow, complainant herein, on March 18, 1946, contracted to sell to the respondents the real estate described in the will as the "premises situate on the west side of Main Street in the Town of St. Georges." Thereafter, complainant requested respondents to perform the contract, but respondents refused.

This is a bill to enforce the contract specifically, and respondents in their answer to the bill defend solely on the ground that complainant is unable to convey a fee simple title to the property, and hence cannot fulfill her contract.

The question for determination is whether or not the complainant, Mary E. Carrow, has fee simple title to the real estate in question. Both sides agree that the question must be answered as a matter of law from a construction of the will of the complainant's father, Theodore Carrow. The parties have, therefore, pursuant to *Rule* 43 submitted the matter for decision on bill and answer.

The language which poses the problem for determination follows:

"I will and bequeath to my beloved wife Adeline Carrow and my daughter Mary E. Carrow my House and premises situate on the west side of Main Street in the Town of St. Georges, * * *.

\* \* \* \* \* \*

"I further request and direct at the decease of my wife, the one half interest I have made of all of my estate in this my will to my wife, shall revert to my daughter Mary E. Carrow."

Complainant contends that since the death of her mother she has been seized of a fee simple title to the property. Respondents contend that by the first quoted sentence, the testator gave a fee simple title to the property to the complainant and her mother; and that they held such title as tenants in common. Respondents further contend that, having disposed of a fee simple title by the first quoted sentence, the testator's "subsequent attempt toward limitation over is inconsistent with the estate devised in the first instance" and "the first intention cannot yield to any subsequent limitation although contained in the same instrument."

As always, we seek the testator's intent as expressed in his will, and I shall mention principles of construction only as they may be said to help or hinder in arriving at this objective.

The first quoted sentence indicates that the testator desired his wife and daughter to have the property. The provision, in the absence of other provisions, as complainant concedes, would have vested in complainant and her mother an estate in fee simple as tenants in common. This being so, respondents would have me go no further in ascertaining the testator's intent as to the quantum of the estate given.

The simple answer must be that for purposes of deciding the present problem all parts of the will speak as of the date of the testator's death, so that no provision is

entitled to any conclusive significance because of its physical position in the testamentary instrument. A testator does not to my mind create a certain estate by one provision, and thereafter cut it down by a subsequent provision in the same instrument, because such a process of reasoning assumes one provision to have become operative before another, which is not the fact. Intention here is indivisible.

When a provision in a will appears to give an unlimited estate, and a subsequent provision qualifies the quantum of estate which otherwise would have been given, there is no conflict in so far as the testator's actual intent is concerned. The conflict only arises when we insist on applying an artificial rule of construction to the effect that a subsequent provision in a will cannot limit the effect of a prior provision, presumably giving an estate outright. The very statement of this rule of construction shows that it contains by way of an assumption the very point which the court should really decide, namely, whether or not the later provision was intended to modify the earlier one.

Respondents rely heavily on *James, Administrator, v. James, et al.,* 16 *Del. Ch.* 34, 36, 139 *A.* 787, 788, where it was noted that "an absolute estate given in one part of a will in clear and decisive terms, cannot be cut down or limited to a lesser estate by subsequent provisions of the will unless the part providing for the lesser estate is expressed in as clear and decisive language as the part giving the estate in fee."

Other Delaware cases have approved this rule of construction, including a very recent case decided by this court. See *Craven, et al., v. Wilmington Teachers Association, et al., ante p.* 180, 47 *A.* 2d 580.

While this rule is, of course, to be considered and applied when appropriate, I believe it was intended to be applied in the light of the true function of the court to ascertain intent from the whole instrument rather than from

a segment thereof. The following statement appearing in 30 *American and English Encyclopedia of Law,* (*2d Ed.*) *page* 687, sets forth to my mind the desirable method of applying this rule of construction:

"It has become a settled rule of construction that when the words of the will in the first instance distinctly indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provision which is ambiguous or inferential and which is not equally as distinct as the former; or, the rule may be stated that a clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down. Whichever form of language be adopted, however, the plain intention of the testator, and not the comparative lucidity of the two parts of the will is to be regarded."

Apart from the necessity for applying any rule of construction, it seems clear that the testator intended his wife to have only a life estate in the property here involved. He so states in the will when he requests and directs that her one-half interest shall "revert" to his daughter. There is no ambiguity here when we keep in mind that all the will becomes operative at the same time, and there is no cutting down or paring down of an otherwise unlimited estate. Even if we follow the approach which assumes an absolute estate and a subsequent cutting down thereof by a later provision, we arrive at the same result, because I am convinced that the language whereby the testator directed that the interest should revert to the daughter is as clearly indicative of an intent to give only a life estate as the previous language is to give a fee simple.

Precedents are of little assistance in will construction cases because of the numberless inflections of expressed intent, but they do reveal that in situations of this general nature the courts have been inclined to look at the entire will in determining an intent, rather than seizing upon one particular provision to the exclusion of all others. Thus, it has been recognized that the provision of a will which seemingly created a fee was modified by subsequent words in the will showing an intent to give only a life estate. See

*Hill v. Gianelli*, 221 *Ill.* 286, 77 *N.E.* 458, 112 *Am. St. Rep.*
182; *In re Littlewood's Will*, 96 *Wis.* 608, 71 *N.W.* 1047;
*Ewering v. Ewering*, 199 *Ky.* 450, 251 *S.W.* 645.

Moreover, the use of the word "revert" by the testator
is a rather strong indication that he intended to have the
interest pass to or go to the daughter at the mother's death.
See *Marvel v. Wilmington Trust Co.*, 10 *Del. Ch.* 163, 87
*A.* 1014.

I conclude that the will evidences an intent to vest the
complainant with a remainder in fee to all the property
in question, and that upon the death of her mother the
complainant became seized of the entire interest in the prop-
erty in fee simple. Complainant is, therefore, entitled to
have the contract of sale specifically enforced.

A decree accordingly will be advised.