MARY D. SCHNEER vs. SARAH GREENBAUM.

1. WILLS—PROPERTY DEVISED.

A will devised to testator's adopted daughter "absolutely" the realty described, and provided that, on her death without living issue, then one-half of the land devised to her should go to the testator's brother, and the other half divided equally between his nephews. *Held*, that the testator's adopted daughter took either a fee simple or fee tail estate in the land devised to her.

2. ESTATES TAIL—ESTATE IN FEE TAIL.

An estate in fee tail became an estate in fee simple when conveyed absolutely to another.

(*February* 15,1913.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*Daniel O. Hastings* for plaintiff.

*Charles W. Bush* for defendant.

Superior Court, New Castle County, February Term, 1913.

Action by Mary D. Schneer against Sarah Greenbaum. Judgment for plaintiff.

ACTION ON THE CASE (No. 82, January Term, 1913) for breach of contract. The case stated, signed by the respective counsel, disclosed the following facts:

James D. Ware, late of New Castle County, deceased, by his last will and testament, dated the twenty-eighth of January, A. D. 1896, which after his death was duly admitted to probate and is of record in the office of the Register of Wills in and for New Castle County, did devise *inter alia* as follows: "I give, devise and bequeath to my adopted daughter, Sallie E. E. Mc-Clymont, formerly Sallie E. E. Ware, absolutely, the following lots, pieces or parcels of land, with the brick dwelling houses thereon erected, situated in the City of Wilmington, known as Nos. 613 and 615 West Third Street and Number 228 Parish Street", and in a subsequent item of the said will did devise as follows: "In the event of the death of the said Sallie E. E. Mc-Clymont without living issue, then I give, devise and bequeath one equal half part of the lands and premises devised to her, the said Sallie E. E. McClymont, to my brother, Jeremiah S. Ware, the other half part to be equally divided between my nephews,

James W. Ware and Jeremiah S. Ware, Jr., share and share alike."

The widow of the said testator, to whom the said property was given for life, is deceased.

The said Sallie E. E. McClymont (now Glesner) and Herman Glesner, her husband, did by their indenture, dated the second day of May, A. D. 1912, convey the said premises to Mary D. Schneer, the plaintiff, the said deed being recorded in the Recorder's office at Wilmington, in and for said county, in *Deed Record S, Volume* 23, *page* 503, etc.

The said Mary D. Schneer, the plaintiff, did on the twenty-second day of October, A. D. 1912, agree in writing to sell to Sarah Greenbaum, the defendant, for the sum of twenty-nine hundred and fifty dollars ($2,950) the property therein described and mentioned in the said will of James D. Ware.

Excepting, however, a certain lot, piece or parcel of land with the buildings thereon erected.

The said agreement of sale recited that Mary D. Schneer, (the plaintiff herein) party of the first part, for and in consideration of the sum of one hundred dollars to her in hand paid, agreed to sell to the said party of the second part (the defendant herein) properties known as Numbers 613 and 615 West Third Street and Number 228 Parrish Street, all in the City of Wilmington and State of Delaware, for the sum of twenty-nine hundred and fifty dollars ($2,950.00), the balance of purchase money, twenty-eight hundred and fifty dollars ($2850.00) to be paid on or before the first day of November, A. D. 1912, at which time the said party of the first part should give a deed conveying a good fee simple title to the said party of the second part; that if the said party of the second part failed to pay the balance of the purchase price on or before the said first day of November, A. D. 1912, the said sum of one hundred dollars ($100.00) should be forfeited to the said party of the first part; if the title to the said property should not be a marketable title then the party of the first part should refund to the said party of the second part, the said sum of one hundred dollars ($100.00).

The plaintiff duly executed and tendered, prior to the first day of November, A. D. 1912, a deed conveying a good fee simple

title for the said premises to the defendant which the latter declined to accept and pay the balance of the purchase money as stipulated, on the ground that the said deed did not convey a good fee simple and marketable title. It is agreed that if the court should be of opinion that Sallie E. E. McClymont became seized of a fee simple estate in the said premises by the provisions of the will of the said James D. Ware or that the said Sallie E. E. McClymont became seized of an estate tail under the said will of James D. Ware, and that the said estate tail was barred by the deed of Sallie E. E. Glesner (formerly Sallie E. E. McClymont) and husband to Mary D. Schneer, and that the title to the said premises is a good marketable fee simple title, then judgment shall be entered in favor of the plaintiff and against the defendant for the sum of twenty-eight hundred and fifty dollars, together with the costs of this suit, otherwise judgment shall be entered in favor of the defendant and against the plaintiff for the sum of one hundred dollars, together with the costs of this suit.

### BRIEF OF DEFENDANT.

The defendant agrees that under the first recited provision of the testator's will, the plaintiff takes a fee simple estate but is in doubt as to the effect of the second recited provision. If by reason of the latter provision the plaintiff takes an estate tail, she can convey the said lands in fee simple under *Section* 27, *Revised Code* 631, and in the event the plaintiff as grantee of Sallie E. E. McClymont, is seized of a good fee simple title.

Two cases only can be found in the Delaware reports which are pertinent to the question as to what estate Sallie E. E. McClymont took under the said will.

In *Rickards v. Gray*, 6 *Houst.* 232, devises of real estate were made to two daughters in fee simple with a provision that if "both of my said daughters should die, leaving no issue to survive them" then the surviving brothers of the testator should take in fee simple. The court held that as the daughters had survived the testator, they took absolute estates in fee simple and the devises over were substitutional, to take effect in the event of the death of the first taker in the lifetime of the testator, and not executory,

being too remote. The testator's clear intention was that he should not die intestate as to the lands devised if his daughters died in his lifetime without any one to take their place.

In the case of *Caulk v. Caulk*, 3 *Penn.* 528, the testator devised real estate to each of his three sons in fee simple and then provides that if "either of my sons * * * should die leaving no child or children, then * * * the survivors or survivor shall inherit the deceased one's portion" * * * in fee simple. The court held that each of the sons took an estate tail, on the ground that the testator intended to treat the three sons alike and not to deprive the issue of one son, more remote than immediate children, of the father's share at the death of the father and bestow it on the surviving sons and their issue.

The defendant in this case should not be compelled to accept title until the court has construed the will of James D. Ware and definitely decided what estate was taken under the above devise.

### BRIEF OF PLAINTIFF.

The defendant refuses to take the title to the said premises on the ground that Mary D. Schneer has not a marketable fee simple title in the premises which she has contracted to convey.

James D. Ware devises this property to his adopted daughter, Sallie E. E. McClymont "absolutely", subsequently providing that "In the event of the death of the said Sallie E. E. McClymont before my death without leaving issue then I give, devise and bequeath one equal half part of the lands and premises devised to her, the said Sallie E. E. McClymont, to my brother, Jeremiah S. Ware; the other half part to be equally divided between my nephews, James W. Ware and Jeremiah S. Ware, Jr., share and share alike."

The question to be determined is what effect the latter provision has upon the absolute gift in the earlier part of the will.

In the case of *Rickards and Rickards v. Gray*, 6 *Houst.* 232, the will of Nehemiah Davis is construed by the Court of Errors and Appeals. By that will Davis gave to his daughter, Caroline M. Gray, certain property and then provided as follows:

"The above and foregoing described and mentioned tracts,

pieces and parcels of land I give to my said daughter, Caroline, and to her heirs provided nevertheless that if my said daughter Caroline should die leaving no issue to survive her then and in that case my will and desire and I so order and direct that all the real estate I have given my said daughter Caroline M. shall go to and become the 'property of my daughter Ratie to her heirs subject to the restrictions and limitations hereinafter made and provided.''

A similar provision was made for his daughter, Ratie E., and a like provision made, giving the property to Caroline M. in case Ratie E. should die, leaving no issue to survive her.

The will contained the further item:

''Item: In case both of my said daughters should die leaving no issue to survive them my will and desire is that my surviving brothers (if any) as the children of my deceased brothers and sisters shall have all my real estate to be divided equally between my said brothers who survive me and the children of my said deceased brothers and sisters, the children of a deceased brother or sister, to take only a parent's share to them, their heirs and assigns forever. My will and desire further is that if both my said daughters should leave issue to survive them or either of them and said issue should die leaving no issue to survive them or either of them then and in that my said real estate shall go to my said brothers and the issue of such of my brothers and sisters who are deceased as above provided.''

The court held that each of the daughters had a fee simple title to said lands, and the Chancellor, in rendering the opinion of the court, used the following language:

''This will does not say in terms that in 'case either of the daughters. died, leaving issue, that such issue should take the deceased parent's share, nor that if the issue of such issue should die leaving issue, such issue should take the same. share as that possessed by their respective parents, but the implication to that effect is as strong as the expression would be and would have the same effect. Now we have seen that the first part of these several devises to his daughters would give to each of them a fee simple, and that the provision, in case either of the daughters die without leaving issue to survive her, is inconsistent with the daugh-

ters taking an estate tail in their respective shares on the idea that
the testator meant an indefinite failure of issue of his daughters,
and that the limitations over could not take effect by way of
executory devise because they would be too remote. Some other
mode must, therefore, be discovered of interpreting this will, by
which all of its provisions may be made to harmonize, and such a
construction given to it as will be free from absurdity, and render
it consistent in all its parts  *  *  *  Is there any construction
that can be given to the will of Mr. Davis, by which all its provi-
sions can be rendered harmonious and consistent? There is one,
and only one, and that is, that the will must be so construed as
that all the contingencies mentioned in it must be considered as
intended to happen in the contemplation of the testator before
the time of his own death, the devises in the will over being con-
sidered substitutional and not executory. Such a construction
may be very properly given to it, and would be justified by the
principles and authorities before referred to, and particularly by
the decisions in the cases of *Clayton v. Lowe* and *Gee v. Mayor*,
of Manchester."  *  *  *  concluding as follows:

"For the reasons I have stated, and upon the authorities
and principles I have cited, I am of the opinion that the daugh-
ters of the testator, having survived their father, took, upon his
death, an estate in fee simple in the lands respectively devised to
them, and that the said Ratie E. was capable to convey an inde-
feasible estate in fee simple in the said lot of ground in said arti-
cles of agreement mentioned."

In the later decision of *Caulk v. Caulk*, *3 Penn*. 528, the will of
Isaac Caulk is construed. Caulk devised to his son, James Wesley,
certain real estate, to him, his heirs and assigns forever; certain
other real estate he devised to his son Leonard, to him, his heirs
and assigns forever; and certain other real estate he devised to his
son Alfred, to him, his heirs and assigns forever. By subsequent
item of his will the testator provided as follows:

"And further my will and desire is that if either of my sons,
James Wesley, Leonard and Alfred, should die leaving no child
or children then and in that case the survivor or survivors shall
inherit the deceased one's portion or portions, to them or either
of them, their heirs and assigns forever."

The court held that the three children mentioned took an estate tail in the lands so devised to them.

The *Davis case* seems to have been decided upon the point that the testator had in mind at the time the will was made the death of his daughters without issue, prior to his own death, while in the *Caulk case* this point was not raised or argued at all. Counsel in the *Caulk case* contended that the sons took either an estate tail or a defeasible fee simple with an executory devise over to the survivor or survivors upon their dying leaving no child or children living at the time of death. The court at *page* 538 said:

"It is unquestionably the law, and has been so declared by our own courts that the words 'dying without leaving issue', unless explained and restricted by the context, mean a general and indefinite failure of issue and their effect is to confer a fee tail. This is a proposition that is so elementary as to need no citation of authority to support it."

And in the latter part of the opinion it is said:

"It might be argued with much force that taking the whole will together, a fair construction would be to hold that each son took an absolute fee simple, and that any words therein which would seem to cut down the fee simple estate first given to a lesser estate, were inconsistent with the manifest intent of the testator as shown by the first devise and the language of the limitation over. Such a contention would be based on the fact that it clearly appeared from the whole instrument that the testator intended to treat his sons and their issue, however remote, with perfect equality, and the intention thus manifest should be carried out. But, as was said in *Parkman v. Bowdoin*, the devise over being to collateral heirs of deceased son, the words 'heirs and assigns' first used are necessarily cut down to an estate tail."

In *Jones v. Webb*, 5 *Chancery* 132, the will of Israel D. Jones is construed. It provided as follows:

"I do give and bequeath unto my sister, Elizabeth Jones and sister Sarah J. Webb all my real and personal estate whatsoever share and share equally alike; and in case of death of either of them it is to go to their children."

This case is not so much in point. It was said by the court in the concluding part of the opinion:

"Upon the authority of the foregoing case, and in conformity with the general uniform tenor of decisions upon this subject, I am of opinion that, upon the death of Israel D. Jones, his sisters, Sarah J. Webb and Elizabeth Jones, who survived him, under and by virtue of his will, took an absolute interest in both the personal and real estate devised to them; that the word 'estate' in the will, carried the entire interest which the testator had in both species of property; and that the interest which passed to them under the will was not lessened or in any manner qualified by the words 'but in case of the death of either of them it is to go to their children'; and that these words meant dying in the lifetime of testator, and not after his death."

By *Section* 24, *Revised Code*, 640, it is provided:

"A devise of real estate in a will, without words of limitation, shall be construed to pass the fee simple, or other the whole estate, or interest, which the testator could lawfully devise in such real estate, unless a contrary intention appear by the will."

By *Section* 27, *Revised Code*, 631, it is provided:

"A person having a legal or equitable estate or right, in fee tail, in possession, the remainder, or reversion, in any lands, tenements or hereditaments, shall have power to alien the said lands, tenements, or hereditaments, in fee simple, or for other less estate, by deeds in the same manner and as effectually as if such estate, or right, were in fee simple; * * * *"

*Page on Wills, Section* 676, lays down the rule:

"Where the testator devises property to a named beneficiary with the condition that if this beneficiary shall die 'without issue' or 'without heirs' the property devised shall go to some other designated person, several interesting questions are presented. The first question to consider is whether this is a devise upon condition or not. The determination of the question turns on the construction of the phrase 'dying without issue'. The weight of modern authority is that such a phrase, without anything further in the will to indicate the intention of testator, and when inserted in order to provide for a gift to another in the event of dying without issue, means death in the lifetime of testator. Accordingly, if the beneficiary named in the will dies before the testator neither

Opinion—Judgment Entered.

his estate nor his heirs can claim an interest in the devise, while, if he survives testator, he takes an absolute fee simple free from any conditions.

"This construction treats these words as not strictly conditions, but as directions for substitution in order to prevent lapse; and, if at the death of testator, the designated beneficiary survives him, he takes the estate given absolutely, and is not divested thereof by his subsequent death without issue, but it passes by his will, or descends as his property in case of intestacy."

It seems quite clear that the intent of James D. Ware, when making his will, was to give to his adopted daughter, Sallie, the property mentioned in fee after the death of his widow and did not intend that she should have a less estate. It matters little, however, under our law whether it be a fee simple or a fee tail, so far as passing title is concerned, as under the provision of the statute a fee tail can be barred by deed, as has been done in this case.

Pennewill, C. J., delivering the opinion of the court:

[1, 2]  The court being of the opinion that under the will of James D. Ware, mentioned in the foregoing case stated, his devisee, Sallie E. E. McClymont, became seized of an estate either in fee simple or fee tail in the lands devised to her, it is unnecessary to determine which of those estates she became seized of. If it was a fee simple estate there can be no question respecting the title conveyed by the deed of Sallie E. E. Glesner (formerly McClymont) to Mary D. Schneer, and if it was an estate in fee tail there likewise can be no question because the estate tail being barred by said deed a fee simple title became thereby vested in the grantee. Therefore, the foregoing case stated having been considered, it is the opinion of the court that the title to the said lands and premises conveyed by the deed of Sallie E. E. Glesner to Mary D. Schneer is, so far as the will of James D. Ware is concerned, a good fee simple title, and that judgment should be entered in favor of the plaintiff and against the defendant for the sum of twenty-eight hundred and fifty dollars, together with the costs of suit.