DELAWARE TRUST COMPANY, a corporation existing under the laws of the State of Delaware, Administrator Cum Testamento Annexo of Frances O. Elliott, late of New Castle County,

*vs.*

JOHN L. ELLIOTT, 2ND, CLARA MITCHELL, MARTHA CAREE, SAMUEL T. GRIFFITH, JOSEPH E. GRIFFITH, ELIZABETH RAMSDEN, FLORENCE WALLINGTON, ROBERT WALLINGTON, GEORGE WALLINGTON, MARY SNOW ROBERTS, EUNICE R. WILSON, MARY A. TITTER, CARRIE A. STRADLEY, LILLIE A. CANN, CATHERINE A. BOUCHELLE, WILLIAM S. ARMSTRONG, CARRIE R. SUDLER, LILLIAN R. BOARDLEY, EMMA JONES, MARY CAVENDER, ALBERT CAVENDER, CHADWICK CAVENDER, THOMAS KIBLER, EVELYN KIBLER, HARRY KIBLER, SARAH MILLINER, HENRY WHITTOCK, LYDIA CASPERSON, MARTHA FOARD, HARRY FOARD, ROBERT CASPERSON, EDNA W. LEESON, CARLOS BLAKENEY, ALMA BARBER, DAVID P. SMITH, JR., MARY KENNARD, OTIS ARMSTRONG, ELIZABETH ROBERTS, ETHEL HOBBS, CATHARINE ROBERTS, ZACHARIAS ROBERTS and JOHN ROBERTS.

*New Castle, July* 20, 1929.

*James H. Hughes, Jr.*, of the firm of Ward & Gray, for complainant.

*George C. Hering, Jr.*, for John L. Elliott, 2nd.

THE CHANCELLOR. John L. Elliott, 2nd, claims to be entitled to the payment to him absolutely of the fund now in the hands of the administrator c. t. a. awaiting distribution. Inasmuch as that fund is made up in part from the proceeds of sale of real estate mentioned in both the ninth and tenth items of the will, the claim set up by John L. Elliott, 2nd, requires that the court shall place a construction upon both of those items.

I will consider first the ninth item which devises to John L. Elliott, 2nd, an interest in "Delmont." Taking the whole will into account the devise of "Delmont" was first to the husband of the testatrix for life, remainder to her son, Lea, for life and then to Lea's son, John L. Elliott, 2nd. The language of the devise to John L. Elliott, 2nd, is:

"At the death of my said son, Lea C. Elliott, * * * to my grandson, John L. Elliott, the Second. And in the event of my said grandson, John L. Elliott, the Second, dying without leaving issue to survive him it is my will that my said farm shall go and descend to my heirs at law according to the intestate laws of the state of Delaware now in force."

We are not concerned here with "Delmont" in its physical quality of real estate. What the complainant is in possession of is money derived in part from a sale of a portion of "Delmont," obtained as a surplus from a sale ordered by the Orphans' Court in order to secure funds for the payment of debts. The fact that it is money with which we are dealing, however, does not, so far as the beneficiaries under the will are concerned, in anywise alter the fact that the construction which is to be given to the ninth item is as of a devise of real estate, for the sale worked a conversion of realty into personalty only so far as was necessary in order to effectuate the debt-paying purpose of the statute. Any surplus left after that purpose was accomplished is to be treated by those having in charge the execution of the testamentary intent as though it retained its original form of real estate. 13

C. J. 876. We are therefore dealing in principle with a question touching a devise of real estate.

The language of the devise to John L. Elliott, 2nd, in the first instance is not accompanied by words of limitation. Where such is the case, our statute (*Rev. Code* 1915, § 3243) provides that the fee simple or other the whole estate or interest passes, unless a contrary intent appears by the will. It is plain therefore that the language of the first sentence of the ninth item, standing alone, confers a vested fee simple interest in John L. Elliott, 2nd.

There being then in the first instance a devise of a fee simple interest, what is the effect thereon of the next provision in the item which specifies that in the event of the devisee's death "without leaving issue to survive him," the land devised shall "go and descend" to the heirs at law of the testatrix? This is the critical point in the case. It is argued by the solicitor for John L. Elliott, 2nd, that the contingency of death without issue is referable to the period of the lives of the testatrix and of the two life tenants; that John L. Elliott, 2nd, having survived them all, the contingency on which his absolute interest was to be divested has become impossible of fulfillment and that accordingly his fee simple estate is now free of all conditions.

Had this devise been in some such simple form as this—to A. for life, remainder to B. in fee simple, and in case of B.'s death, to C. in fee—there can be doubt that B.'s death would be referable to the lifetime of the testatrix and of A. *Chapple v. Hometown Realty Co.*, 16 *Del. Ch.* 5, 139 *A.* 457; *Rickards, et al., v. Gray*, 6 *Houst.* 232, 235; *Jones v. Webb*, 5 *Del. Ch.* 132; *Marvel, Adm'r., v. Wilmington Trust Co.*, 10 *Del. Ch.* 163, 87 *A.* 1014; *Wilmington Trust Co. v. Houlehan*, 15 *Del. Ch.* 84, 131 *A.* 529. The reason for this rule is that, inasmuch as death is spoken of by the testator in terms of a contingency, it must, being in itself an absolutely certain event, be associated with some circumstance outside of itself in order to render it contingent, and the only possible circumstance available for that purpose is the time of its happening in relation to the period when the right of possession is to arise. This rule as was pointed out in *Wilmington Trust Co. v. Houlehan, supra,* is founded more on precedent than on principle

and so little favored is it, that only slight circumstances will be laid hold of to overturn it.

The devise we are examining is not of this simple type. It is to be observed that the testator did not speak of her grandson's death as the sole contingency upon the happening of which his interest was to terminate. She coupled with his death another event. It was not alone his death, but his death without leaving issue. While death is a certain event which will inevitably occur, yet death without leaving issue is a pure contingency. Hence when the devisee's death is here spoken of in association with the contingent circumstance of having no issue, there is no necessity for casting about for a period to which to refer it in order to turn it into a contingent event, as is done in those cases where the simple case arises which is contained in the example above given. If where the contingency is that of dying without issue, it means that the time of the death is referable to the period of distribution, as is contended by John L. Elliott, 2nd, it is apparent that the thoroughly well settled rule touching the subject of definite and indefinite failure of issue and its legal consequences needs to be re-examined.

The Court of Errors and Appeals of this state in the case of *Rickards, et al., v. Gray, supra*, had before it a case where the contingency on which the estate in the first devisee was to go over was "if my said daughter * * * should die leaving no issue to survive her." This phraseology is not distinguishable from that found in the present case. In construing such language in the *Rickards Case*, the court held that the failure of issue was a definite as distinguished from an indefinite one. Such was the opinion of all the judges as is evident from a reading of the several opinions which the report of the case contains. In *Schneer v. Greenbaum*, 4 *Boyce*, 97, 86 *A*. 107, the language was—to *A*. in fee, and in the event of her death without leaving issue, to B. in fee. Just what view the court took in that case as to the meaning of the language in which the contingency was couched with respect to whether it meant a definite or indefinite failure of issue it is difficult to say because of the brevity of the opinion. The language, however, was not the same as that found in the *Rickards Case* and in this one. I feel impelled, in view of the

opinions filed in the *Rickards Case*, which was before the court of last resort in this state, to conclude that when the testatrix here spoke of the death of her grandson without leaving issue to survive him, she was referring to a definite failure of issue. If that be so, the case belongs in the category of those cases exemplified by the following familiar formula—to A. in fee and if he should die without issue living at the time of his death, to B. in fee. Now in such a case as that, citation of authority is not needed to show that A. has a fee subject to an executory devise over in favor of B. in case the contingency arises. I conclude that a similar result ensues from the language of this will, and that John L. Elliott, 2nd, was given a defeasible interest in the land subject to an executory devise over in favor of the heirs at law of the testatrix. A case practically on all fours with this one is found reported in *Nicholson v. Bettle*, 57 *Pa.* 384, and the same construction was adopted. The same result which would have obtained had no part of "Delmont" been sold, must also obtain with respect to the proceeds which represent the portion that was sold.

The solicitor for John L. Elliott, 2nd, lays great stress upon *Rickards, et al., v. Gray, supra.* A careful reading of that case, however, shows it to be quite clearly distinguishable from this one. *Rickards v. Gray* really falls in the class of cases which are typified by the example stated near the outset of this opinion in connection with which it, together with other Delaware cases, is cited. That is to say, it was a case where the court found that there was no possible contingency associated with the death of the first taker unless the time of the death should be referred to the testator's life time. In the *Rickards Case*, it is to be noted, the court pointed out that the estate in the first taker was to be defeated in case of death, whether with or without issue, an event absolutely certain to occur and therefore in no sense contingent. It was just such a case as is illustrated by the extract which the Chancellor at page 246 of his opinion in the *Rickards Case* quoted from *Hawkins on Wills*, 258, as follows:

"Where real or personal estate is given with words of limitation implying the absolute ownership, but there follow alternative gifts over in the event of the first taker dying with and without issue or children, which exhausts

all contingencies, so that if unrestricted in point of time their combined effect is to reduce the interest of the first taker to a life estate only, a ground is presented for restricting the gifts over to the period of distribution, in order to avoid an inconsistency with a prior absolute gift. *Hawkins on Wills*, 258."

*Rickards, et al., v. Gray*, therefore, is not an authority which supports the contention of John L. Elliott, 2nd, in this case. Nor does *Caulk v. Caulk*, 3 *Pennewill*, 528, 52 *A.* 340, cited by his solicitor support his contention. In that case the question of whether the death of the first taker could be referable to the life time of the testator appears not to have been of sufficient merit to warrant the attorneys engaged in its presentation to raise it, and the court never considered it. The devise was to each of three sons, his heirs and assigns, and if either "should die leaving no child or children, then and in that case" over to the survivors or survivor. The sole question was, said the court, whether "each of the sons took either an estate tail, or a defeasible fee simple, with an executory devise over to the survivors or survivor upon the * * * leaving no child or children living at the time of death." The question therefore was the age old one that courts have so often been called upon to consider, viz. did the language speak of a definite or of an indefinite failure of issue? That is the real question here also—not a question of whether the dying without issue is referable to the life time of the testator or of a prior tenant for life. In the *Caulk Case* the ruling was that an indefinite failure of issue was meant and that consequently each son took an estate tail which was capable of being barred under the statute. Here, however, the *Caulk Case* cannot indicate the same result not only because the language is distinguishable, but because also the particular language here employed has been said by the judges speaking for the court of last resort to indicate a definite failure of issue.

The second and final subject that needs to be noticed is what is the construction to be placed on the tenth item of the will? All that has been said in discussing the ninth item is pertinent to a consideration of the tenth. Indeed I can discover no distinction between the two. They are in point of principle identical, and the same construction is applicable to each.

Decree accordingly.